Andrew BURINSKAS, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Ferrell-Hicks Chevrolet, Inc., Intervenor.

FERRELL–HICKS CHEVROLET, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Nos. 18054, 19222.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 1, 1965.

Decided Feb. 1, 1966.

---

Mr. Mozart G. Ratner, Washington, D. C., with whom Mr. Robert M. Lichtman, Washington, D. C., was on the brief, for petitioner in No. 18,054.

Mr. Karl W. Grabemann, Chicago, Ill., for petitioner in No. 19,222.

Mr. Solomon Hirsh, Atty., N.L.R.B., for respondent. Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stephen B. Goldberg and Richard P. Lawlor, Attys., N.L.R.B., were on the brief, for respondent. Mr. Hans J. Lehmann, Atty., N.L. R.B., also entered an appearance for respondent in No. 18,054.

Before BAZELON, Chief Judge, BASTIAN, Senior Circuit Judge, and McGOWAN, Circuit Judge.

BASTIAN, Senior Circuit Judge:

The employer, petitioner in No. 19,222, seeks to set aside a final order of the National Labor Relations Board, and cross-petition has been filed for enforcement thereof. The subject matter of this controversy was before the Court on a

prior occasion. Burinskas v. National Labor Relations Board, No. 18,054, order dated January 8, 1964, hereinafter referred to.

The case originated in a complaint filed with the Board by the General Counsel, claiming that Ferrell-Hicks (employer) had engaged in unfair labor practices proscribed by Section 8(a) (1) and (3) of the National Labor Relations Act, as amended, by discharging Burinskas for union activities. The trial examiner to whom the case was referred by the Board filed his intermediate report, finding that Burinskas had been wrongfully discharged because of union activities and recommending his reinstatement with back pay. The case came before the Board and, by its decision and order dated April 22, 1963, the majority of the Board concluded that the General Counsel had failed to establish by a preponderance of the evidence that the employer had violated Section 8(a) (1) and (3) of the Act by discharging Burinskas. The Board directed that the complaint be dismissed.[1]

Thereupon, Burinskas filed a petition in this Court (No. 18,054) seeking reversal. It appeared that while the Board had adopted the findings of the trial examiner, it had concluded that his inference to the effect that Ferrell-Hicks had discharged Burinskas for union activities was mere speculation. The case then came on for argument and on January 8, 1964, this Court, by order, remanded the case to the Board for reconsideration of its decision with a view to its clarification. The order of remand was in substantial part as follows:

"* * * having had difficulty in apprehending the basis for the Board's Order by reason of ambiguities in its Decision deriving from the Board's treatment of the Examiner's findings with respect to the credibility of certain witnesses for the employer and uncertainty as to the extent to which the Board rejected the Examiner's inferences drawn from the evidence found credible,

"* * * ORDERED * * * that this case [be] remanded to the Board for reconsideration of the Decision with a view to its clarification, with full opportunity to be afforded by the Board to all parties to be heard upon any action proposed to be taken by the Board as a result of this remand."

Upon remand, the Board issued a notice to show cause stating its intention to issue an order setting aside the Board's original order and adopting the findings, conclusions and recommendations of the trial examiner. In response to the notice to show cause, Ferrell-Hicks filed an answer thereto protesting the proposed action of the Board. On December 9, 1964, a majority of the Board issued a supplemental order setting aside its original order and adopting the trial examiner's findings, conclusions and recommendations.

On appeal from the supplemental order, the employer claims (1) that the scope of the Court's remand did not permit the Board to take the action it did; (2) that the Board's finding that the employer violated Section 8(a) (1) and (3) by discharging Burinskas was not supported by substantial evidence considered on the record as a whole; and (3) that the Board's remedy is inappropriate in the event the Court determines that the Board's supplemental decision and order should be enforced.

We think the scope of the Court's mandate was sufficient to permit the Board to take the action that it did. We further hold that the Board's findings as to the violation of Section 8(a)

---

1. The Board's decision and order contained the following: "The Board has reviewed the rulings made by the Trial Examiner at the hearing and finds that no prejudicial error was committed. The rulings are hereby affirmed. The Board has considered the Intermediate Report, the exceptions and briefs, and the entire record in the case, and finds merit in certain of the Respondent's exceptions."

(1) and (3) are supported by substantial evidence on the record as a whole.

■ The employer argues that the remedy of the Board as to back pay, in the event the Court orders enforcement, is inappropriate for the reason, among others, that the Board failed to toll back pay during the period between the Board's original decision favorable to the company and the date of this Court's enforcement of the Board's supplemental order.

The Board answers that the employer is foreclosed from raising this point because it failed to make proper objection in the Board proceedings, and so is barred by Section 10(e) of the Act, which reads:

"No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless·the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."

We believe, however, that it is reasonably clear from the record that adequate objection was made to the failure of the Board to toll, and that the case is properly before this Court. In the employer's exceptions to the original report of the trial examiner, objection to the remedy as to pay was made in the following terms:

"(63) The Respondent excepts to 'the remedy' of the Trial Examiner, and the failure of the Examiner to conclude that no remedy is needed or warranted. * * *

* * * * * *

"(65) The Respondent excepts to each and every portion of the Recommended Order contained in the Intermediate Report. * * *"

The employer, in its answer to the order to show cause, made reference to the exceptions to the intermediate report of the trial examiner and specifically adopted those exceptions by reference, and asked that they be made a part of the answer.

When the Board was first considering the examiner's report, the objection to the provision for back pay was before it but the issue became moot when the Board first ruled with the employer on the merits and dismissed the complaint. However, when the case was remanded, the Board, by the issuance of the order to show cause why the examiner's report should not be adopted, restored the situation to its status before the original order was issued. The employer, at this point, had the right to believe that the Board, in taking up the matter the second time, considered as still standing the objections which the employer had made to the examiner's report. Certainly this particular objection to the back pay award had not lost any of its force. Indeed, it had taken on additional weight. The Board, in considering anew whether to adopt the examiner's report in whole or in part, could not properly have ignored the exception to the' remedy as it stood. We think it more likely than not that the Board, with its expert sensitivities alerted by some considerable past familiarity with the tolling issue in this context of a change in litigating fortunes, took that more limited objection to be comprehended within the broader exception; and, in deciding that back pay was to be awarded for the full period, the Board consciously failed to exercise its discretion to withhold it in part.

■ Furthermore, upon issuance of the supplemental decision and order, an attempt again was made to have the Board toll back pay.[2] While it is not

**2.** By letter dated December 22, 1964, thirteen days after the issuance of the final decision of the Board, the Compliance Officer stated, among other things: "Your contention that Mr. Burinskas is not entitled to any backpay [sic], at least prior to the date of the issuance of the

Board's Supplemental Decision and Order, has been carefully considered. It is noted that the case you cite, Fibreboard Paper Products Corp., 138 NLRB 550 * * * has a different factual situation. In that case, the Board reversed itself pursuant to a petition for reconsideration filed

clear from the record in what manner or to whom the post-decisional objection was made, the Board, through its agent, the Compliance Officer, having considered the objection, cannot now claim that the objection to its failure to toll back pay was not properly before it.

Holding, as we do, that there was in fact sufficient compliance with Section 10(e) to merit consideration by this Court of the employer's claim that part of the back pay should be tolled, we pass to petitioner's third contention.

It appears that for a number of years prior to the decision of the Board in A.P.W. Products, 137 NLRB 25, 31, the Board had as a general rule tolled back pay from the date of the violation to the date of the Board's final order in cases where the trial examiner had recommended dismissal of the complaint and the Board reversed and found a violation. However, in the A.P.W. case the Board reexamined the question and reversed its previous position, and concluded that in the future it would not, as a general rule, toll back pay for the period between a trial examiner's intermediate report recommending dismissal and the finding of the Board of a violation. It stated that in the future "monetary awards will be granted in the light of the facts of each case and may be tolled as in the past where the circumstances warrant it." As a general rule, the Board has ordered back pay without tolling where its decision of no violation has been reversed by an appellate court.

The Board concedes that since the A.P.W. case there have been cases in which back pay has been tolled. Petitioner claims that its case is similar to those, hence back pay should have been tolled here as well. The Board did not respond to this claim. The Compliance Officer in his letter [3] did state:

"It is noted that the case you cite, Fibreboard Paper Products Corp., 138 NLRB 550 (footnote 21), 51 LRRM 1101, has a different factual situation. In that case, the Board reversed itself pursuant to a petition for reconsideration filed by the charging union; in the instant case, the Board's reconsideration of the case came about as a result of a remand from the Circuit Court of Appeals."

It is not at all clear why that distinction should make a difference. More importantly, it is not clear in general from past Board decisions what circumstances warrant the tolling of back pay.

A short discussion of the relevant cases will illustrate our problem. In each of these cases, after a remand from this Court, the Board reversed its prior decision dismissing the complaint against the company. The A.P.W. case was decided in May, 1962. In July of that year, Walls Mfg. Co. v. N. L. R. B., 137 NLRB 1317, was decided. The Board granted reinstatement and back pay but tolled the latter from the time of the trial examiner's opinion to the time of the Board's second decision. This was done without any explanation and with only a "cf." citation in a footnote to the A.P.W. case. In its brief in the case presently before us, counsel for the Board argues that in Walls both the trial examiner and the Board had originally voted to dismiss, while here only the Board initially voted to dismiss. It is not explained why this should make a significant difference, nor has the Board itself ever drawn this distinction.

In September, 1962, the Board tolled back pay in Fibreboard Paper Products Corp. v. N. L. R. B., 138 NLRB 550.

by the charging union; in the instant case, the Board's reconsideration of the case came about as a result of a remand from the Circuit Court of Appeals. Furthermore, the Board, in the instant case,

makes no reference as to whether or not backpay [sic] should be tolled for any period."

3. *Supra* note 2.

Here, there was some discussion of why back pay was tolled:

"Where the Board, upon reexamination of the relevant legal principles, has reversed its own prior determination that Respondent had not by its conduct violated that Act, we believe it would be wholly inequitable to hold Respondent liable for back pay from the date it initially terminated the employment of the individuals here involved."

Back pay was not to begin until the date of the second decision. It was not explained why back pay was not awarded for the period preceding the trial examiner's decision, as had been done in *Walls*.

The Board then decided Kohler v. N. L. R. B., 148 NLRB 1434 (1964). The Board's initial decision had been that certain strikers need not be rehired. Five days later, the union made a blanket application for rehiring, but the company did not rehire those workers the Board said need not be rehired. Upon remand by this Court, the Board held that all strikers should be rehired but tolled back pay from the date the union offer was made to the date of the Court decision for those workers the Board had initially refused to order reinstated. The dissenting Board member argued that back pay should have been tolled until the Board's second decision, as had been done in *Walls*. The majority's explanation was: "We recognize that, on the basis of a narrow technical comparison, there may appear to be an inconsistency between these two decisions. Our rem-

edies, however, are not matters of rote." The Board then asserted, without explanation, that on the facts presented, the public interest was best effectuated by the tolling period adopted for the case before it.

■ Thus, the Board has tolled back pay for varying periods without explanation. More germane to the case before us, however, is the fact that the Board has tolled back pay in cases very similar to the one at hand and has never explained by what criteria it selects the cases in which it will toll. Certainly the Board, in its administration of the Act, has broad discretion in shaping remedies.[4] However, the Board cannot act arbitrarily nor can it treat similar situations in dissimilar ways.[5] The Board has a responsibility to administer the Act fairly and rationally. Merely asserting that the circumstances are "unique" or "unusual" does not provide a proper guideline for the future exercise of the Board's discretion nor does it provide a petitioner with an explanation why his case is being treated in a certain manner.[6] We think the Board should come to grips with this recurring problem, for the protection of the rights of the employee and for the protection of the employer acting in good faith. It would seem that the Board could, in the exercise of its expertise, develop appropriate policy considerations and outline at least minimal standards to govern the ascertainment of tolling of back pay practices.[7]

These cases therefore, are remanded to the Board for findings on the question whether back pay should be tolled.

4. "For the courts to substitute their * * * discretion for that of the Commission is incompatible with the orderly functioning of the process of judicial review." Burlington Truck Lines v. United States, 371 U.S. 156, 169, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962).

5. Melody Music v. F. C. C., 120 U.S.App. D.C. 241, 345 F.2d 730 (1965). More than enumeration of factual differences

between cases is required; the Commission must explain their relevance to the purposes of the Act.

6. Burlington Truck Lines v. United States, *supra* note 4, 371 U.S. at 167–168, 83 S.Ct. 239.

7. International Union of Operating Engineers, Local 49, AFL-CIO v. NLRB, 122 U.S.App.D.C. ——, 353 F.2d 852, decided by this Court, Nov. 4, 1965.